Citation Nr: 1829600 
Decision Date: 06/28/18 Archive Date: 07/02/18

DOCKET NO. 14-28 084 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to service connection for residuals of a traumatic brain injury (TBI).

2. Entitlement to service connection for recurrent brain tumors (pituitary growth hormone-secreting macroadenoma), to include secondary to TBI.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran




ATTORNEY FOR THE BOARD

M.H. Stubbs, Counsel


INTRODUCTION

The Veteran served in the U.S. Army from December 1977 to December 1981.

These matters come before the Board of Veterans' Appeals (Board) from a December 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan.

The Veteran testified before the undersigned Veterans Law Judge (VLJ) during a July 2017 videoconference hearing. A transcript of the hearing is contained in the record.

During the Board hearing, the VLJ left the record open for 90 days to allow the Veteran to attempt to obtain private medical opinions. In November 2017, the Veteran's representative requested that the VLJ allow the record to remain open for an additional 90 days. This request was granted. No additional private records were added in the 180 days provided. However, the claims are being remanded, which will allow the Veteran additional time to obtain the private medical statements he was seeking. 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

During his July 2017 hearing, the Veteran described being injured in service while working on a truck tire. The tire blew and he was "knocked lu-lu so to speak." He stated that he was dazed and by the time the motor pool mechanics reached him his "hands were off [his] head." It is not entirely clear what the Veteran meant by this statement. He was then taken to an office, and from there an ambulance took him to a hospital. He was released the same day and sent home. He stated he was sent back to the unit with a "mild concussion" and had to be under observation by the unit for 72 hours. Following the injury, the Veteran stated that for years he suffered "back headaches." In 2003, he was diagnosed with a brain tumor, pituitary edema, and was going through treatment. He reported that private physicians (Drs. M.A., C., and P.L) all associated his brain tumor directly to his head injury in service. The record contains letters from Dr. P.L. and Dr. T.B.; on remand, the Veteran should be encouraged to provide any additional statements from private physicians. 

Service treatment records include a July 5, 1978 record which noted the Veteran suffered a head injury and was taken by ambulance to a hospital. He was conscious, and stated he was struck while in the Motor Pool. The Veteran complained of "being stricken in head following tire 'blow up'" with the rim of the tire striking the Veteran in the upper left forehead. He denied loss of consciousness, drowsiness, or lowered orientation, dizziness or other symptoms. He had a 2 to 2.5 inch transverse, slightly gaping, laceration on the upper left forehead at hairline. He also injured his left hand. His neurological examination was normal, with negative Babinski and clonus. He was given a head trauma sheet and a laceration sheet. 

A July 6, 1978 record included that the Veteran was struck on the head and had headaches and a laceration. He required sutures for his laceration. He was to return in a few days to have his sutures removed and he was given Fiorinal (butalbital compound with codeine) for his pain. He was also to see "MO" for further evaluation. Another record noted the Veteran was placed on light duty. 

A July 10, 1978 record included that the Veteran complained of headaches and back pain for five days. He noted he was hit in the head with a "tire cage" and "sat in ER for 2 hours." He had a laceration on his forehead that was approximately 1 1/3 inches. He had no neck tenderness. He was assessed with "possible headache and back ache. ETOH unknown." A follow-up note from the same date noted that his headaches seemed to be from the injury on July 5th when he was struck by a "tire cage," and also hit the back of his head when he fell. 

In February 1978, the Veteran was counseled to "stop abusing sick call" based on his continued visits for cold symptoms. The Veteran has alleged during the pendency of this appeal that he was not taken seriously in service regarding his health complaints, and that he was told his health complaints were "all in his head."

A February 1980 record showed the Veteran reported he was hit in the head in 1978 and had to be stitched up. He denied loss of consciousness and had no significant problems since. He was cleared for "PRP." 

The Veteran's July 1981 report of medical examination noted his head scar, but otherwise included normal head, neurological, and psychiatric evaluations. 

His November 1981 report of medical history included his complaint of "poor health." The Veteran stated he had frequent migraine headaches from his 1978 head injury. He selected frequent or severe headaches, dizziness or fainting spells, eye trouble, head injury, tumor, depression or excessive worry, and nervous trouble, among other selections, on the health checklist. He remarked that he had a tumor removed from above his left eye at age 6. And that he was in a hospital in early 1978 in Fort Still, Oklahoma. The reviewing corpsman noted that the Veteran had headaches after being hit by a "tire cage" in early 1978. The remainder of the handwriting is illegible. He had dizziness without fainting following the injury. 

Following discharge from active service, the Veteran attempted to join the National Guard in April 1982. He reported a history of head injury with headaches. He described severe headaches and dizziness for a week following the head injury, and that he continued to have episodes of light headedness. The physician stated that he did not recommend the Veteran for enlistment in the National Guard, due to a number of medical complaints.

The Veteran filed claims for service connection in 1982. In September 1982, he was afforded a VA examination. He reported severe migraine headaches which began after his head injury in 1978. He stated he was in an accident when a tire he was changing blew up and he was hospitalized with a severe scalp laceration and bleeding. He traced his headaches to that time, describing them as starting bi-temporally and radiating down to the back of his neck, which becomes very stiff. He stated his headaches were relieved by pushing on the base of his neck. Further description of the head injury included that he was struck in the left forehead region. He was "not knocked out," but he was taken to the Emergency Room for sutures and he was released. He "continued to complain of headaches from that time onwards" and now gets them about twice a week. Skull x-rays taken at the time of the examination were normal. The Veteran noted that service medical providers felt that his conditions were "only in his head." Examination of his head revealed a 1.5 inch scar running diagonally downwards in the left frontal region. He had normal cranial nerve evaluation. The diagnosis included "normal neurological exam. No residuals of head injury."

A 1983 (undated but provided the Veteran's age) record from Alpena General Hospital noted that the Veteran was taking Tylenol #3 for headaches. Records from February 1986 noted that the Veteran was working when either a tree hit him or he fell (handwriting is difficult), and he hit the left side of his head, his left shoulder, and injured his back. He had swelling and tenderness on the left parietal area. His skull x-rays did not show fracture, but showed soft tissue swelling. He additionally fractured his left scapula and thoracic spine. 

An October 2002 Social Security Disability (SSA) record from the Michigan Disability Determination included the Veteran's complaints of severe migraine headaches.

In September 2003, the Veteran was seen after he woke up with double vision, "everything spinning," nausea, and headaches. A CT scan showed a large mass near his pituitary and he was transferred by ambulance to Saint Mary's Hospital. He underwent a transsphenodial removal of a pituitary adenoma. By February 2004, he had rapid progressive recurrence of his tumor. The Veteran continues to receive treatment for his recurrent cancer, and the type of tumor has resulted in secondary health problems. 

In January 2010, two of the Veteran's private physicians provided statements in support of his claims. Dr. T.B. noted that the Veteran had been under his care for 20 years, and that the Veteran reported being struck in after a truck tire blew up, causing a head injury which required emergent hospital treatment; "however, he was able to finish his military obligations." Dr. T.B. noted that the Veteran would appreciate review of his military service and a "determination that part of his current disability may have initiated while in the military."

Also in January 2010, Dr. P.L., who participated in treating the Veteran's brain cancer, provided a statement that the Veteran had been treated for an invasive pituitary growth hormone/prolactin-secreting macroadenoma with associated acromegaly, hyperprolactinemia, secondary hypothyroidism, secondary adrenal insufficiency, and secondary hypogonadism. The Veteran "raised the question as to whether the above noted pituitary macroadenoma could be a result of a left frontal head trauma he suffered in the late 1970s. This is feasible since medical literature has supported the association between severe head trauma and the development of such pituitary neoplasms."

Lastly, in January 2010, the Veteran was afforded a TBI examination. The examiner found that the Veteran did not meet the criteria for a diagnosis of TBI because his 1978 injury was "very mild." The examiner noted that he did not meet the criteria because he did not have loss of consciousness, posttraumatic amnesia, alteration of mental state at the time of the accident, and he did not have vertigo, nausea, vomiting, or dizziness. He did not have posttraumatic encephalopathy or incur any permanent brain damage. There was no concussion and he recovered completely from this injury with no residual effects. The examiner also opined that the Veteran's pituitary tumor was not secondary to his in-service head injury, and found that his current headaches are due to his pituitary tumor. 

The statement from Dr. P.:L. that there is a positive medical association between severe head trauma and the development of pituitary neoplasms was not contained in the record at the time of the VA examination, and, thus, the VA examiner did not comment on this indication that it was "feasible" that the Veteran's in-service head injury cause his brain cancer. Additionally, during the 2017 hearing the Veteran reported being "knocked a lu-lu" when he was struck in the head, and an indication that the next thing he knew people were helping him back to an office to await an ambulance. This would tend to indicate that the Veteran was dazed or had brief posttraumatic amnesia at the time of the accident. The 2010 examiner noted that the Veteran did not meet the criteria for a diagnosis of TBI, in part, because he was not dizzy following his head injury. But records from 1981 and 1982 indicated that the Veteran reported severe dizziness and severe headaches for a week after the accident, and he continued to have lightheadedness and headaches in 1982. The examiner associated the Veteran's headaches with his brain cancer. The records show that the Veteran complained of headaches through to at least 1983, and then he was struck on the left side of his head a second time in 1986. His increase in headaches appeared to begin in late 2002, with the brain tumor first noted almost a year later. Given all of the above, the Veteran should be afforded a new examination which includes review of his in-service, and early post-service records, as well as the statement from Dr. P.L.

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that he provide any private medical statements related to his claims for service connection for TBI and brain cancer. The claims file contains a January 2010 letter from Dr. P.L.; however, during the 2017 Board hearing the Veteran reported that Drs. M.A. and Dr. C. had directly related his brain cancer to his in-service head injury. Statements from these physicians are not currently of record. The Veteran should provide any relevant statements from private physicians he may possess.

2. Schedule the Veteran for a VA TBI examination. Following a review of the record and interview of the Veteran, the examiner should provide the following:

a) Does the Veteran meet the diagnostic criteria for a diagnosis of TBI? The examiner should note that the Veteran described being dazed ("knocked a lu-lu") after he was struck. He also noted that he did not lose consciousness, but "the next thing he knew" others had come to help him. The examiner should address the November 1981 ETS (Expiration Term of Service) exam and September 1982 VA examination. 

b) Is it at least as likely as not (50/50 probability or greater) that the Veteran has residuals of his in-service 1978 head injury, to include TBI?

c) Is it at least as likely as not (50/50 probability or greater) that the Veteran developed brain cancer due to his service, to include his 1978 head injury? The examiner should address the January 2010 statement from Dr. P.L. that it is "feasible" that a severe head injury may result in the Veteran's type of brain cancer. The examiner should also address whether the combination of the 1978 and 1986 head injuries may have resulted in the Veteran's development of brain cancer.

The examiner must provide a complete explanation for all opinions expressed.

3. Thereafter, readjudicate the issues on appeal. If any benefit sought on appeal remains denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The Veteran and his representative have the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).




_________________________________________________
G. A. Wasik
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).